IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JACKIE LEE BIBBS,                    §
                                     §
            Petitioner,              §
                                     §
v.                                   §        No. 4:14-CV-221-Y
                                     §
WILLIAM STEPHENS, Director,          §
Texas Department of Criminal         §
Justice, Correctional                §
Institutions Division,               §
                                     §
            Respondent.              §


## OPINION AND ORDER

Before the Court is a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254 filed by petitioner, Jackie Lee Bibbs,
a state prisoner, against William Stephens, director of the Texas
Department of Criminal Justice, Correctional Institutions Division,
Respondent.

After having considered the pleadings and relief sought by
Petitioner, the Court has concluded that the petition should be
denied.

## I.   FACTUAL AND PROCEDURAL HISTORY

In 2009, in the 396th Judicial District Court, Tarrant County,
Texas, Petitioner was charged with capital murder.  The indictment
alleged that Petitioner caused the death of Candalin Daniels "by
shooting her with a deadly weapon, to wit: a firearm," and that he
committed the murder "while he was in the course of committing the
offense of retaliation against" her.  (Adm. R., Clk's R., vol. 1,

Indictment; ECF No. 10-2.)  The state waived the death penalty and, on June 17, 2010, a jury found Petitioner guilty of capital murder. The trial court assessed a mandatory life sentence without the possibility of parole.  (*Id.,* Clk's R., vol. 2, J. of Conviction by Jury 328; ECF No. 22-3.)  Petitioner appealed his conviction, but the Seventh District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. (*Id.*, Op., ECF No. 10-10; PDR No. 0869-12.)  Petitioner also filed a state habeas application challenging his conviction, which was denied without written order by the Texas Court of Criminal Appeals.  (*Id.*, SH1 WR-80,624-01-Pt. 1, Cover & 2, ECF No. 12-1.)  This federal petition followed.

The state appellate court summarized the facts of the case as follows:

> Appellant and the victim, Candalin Daniels, also known as Candy, were paramours and had been for several years. They had a child together in 2007. However, by 2009, the relationship between the two had soured and Candy attempted to break off the relationship. Beginning in March of 2009, there were several incidents involving appellant breaking into Candy's home or being suspected of breaking into her home.  Candy had reported such incidents to the Fort Worth Police Department on March 28, April 4, April 15, and May 5, 2009.  Eventually, Candy sought a protective order on May 4, 2009.  The *ex parte* protective order was signed May 5, and served on appellant that same day.  The protective order provided for a hearing to be held on May 20.

> In addition to seeking a protective order, Candy complained about appellant's harassment and other activities to his parole officer [Marcus Cooper].  After

2

discussing Candy's complaints with his supervisor, on May 5, appellant's parole officer had Candy come back to prepare a sworn statement regarding her interaction with appellant.  Subsequently, on May 12, appellant's parole officer advised appellant that the terms and conditions of his parole had been amended to prohibit him from having further contact with Candy.

On May 15, Candy was hosting a fish fry for family and friends at her home. Early in the evening, appellant's nephew, Andrew Bibbs, came to Candy's home and an argument ensued.  Andrew was asked to leave the residence and he complied.  After that, Candy's sister, Mary Ann Daniels, left the party.  As Mary Ann was driving by the Sunny Food Store, which is located down the street on the corner from Candy's home, she noticed appellant's white pick-up at the store.  She then called Candy to alert her.

Candy decided to take her brother-in-law, Tyrone, to the store to ask appellant to quit harassing her. Eventually, a number of the guests at the party left the house and proceeded down the block toward the store. Candy and Tyrone were in front of the others by some 15 feet or so.  As they were walking toward the store, appellant jumped over the fence at the corner of Candy's house with a gun in his hand.  Michelle Brown and Lora Hammons both saw appellant and simultaneously yelled at Candy that appellant was coming from behind her with the gun.  Candy fled toward the store with appellant running behind her firing a gun.  Candy made it to the interior of the store but could not elude appellant.  Candy was shot and died from these wounds.  The medical examiner testified that Candy was shot at least four times.  The store's surveillance camera recorded the shooting, both on an exterior camera and an interior camera.  These DVDs were played for the jury.

As appellant exited the store, he encountered Kiera Daniels, Candy's juvenile daughter, and threatened to shoot her if she did not quit screaming.  Appellant then returned to Candy's house and confronted Candy's 11-year-old son, Craig.  He proceeded to hit Craig with the gun.  Mary Ann had returned to the house and tried to pull appellant off of Craig.  Appellant then proceeded to strike Mary Ann with the gun.  Mary Ann testified that she thought appellant was looking for his son, Cordarian, and intended to harm the child.  She told appellant that

Cordarian was not at the house and appellant then left.
Appellant was eventually arrested for the murder of Candy.

(*Id.*, Op. 1-3, ECF No. 10-10 (footnote omitted).)

## II. ISSUES

Petitioner raises eight grounds for relief, which are construed
as follows:

(1) There was no evidence that the complainant was a
"prospective witness" under the offense of
retaliation;

(2) There was a variance between the indictment and the
jury charge;

(3) The appellate courts abused their discretion by
finding the trial court's admission of hearsay
evidence harmless;

(4) The state knowingly used perjured testimony;

(5) His arrest was illegal because there was no probable
cause to arrest him;

(6) He was denied his right to counsel because he did
not "effectively" waive his right to counsel;

(7) He received ineffective assistance of counsel at
trial; and

(8) He received ineffective assistance of counsel on
appeal.

(Pet. 6-7 & Insert, ECF No. 1.)

## III. RULE 5 STATEMENT

Respondent asserts that Petitioner has sufficiently exhausted
his state-court remedies as to the claims raised and that the
petition is not barred by limitations or subject to the successive-

4

petition bar.  (Resp't's Answer 5, ECF No. 20.)

## IV.   LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 131 S. Ct. 770, 785 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 131 S. Ct. at 786.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  This presumption of correctness applies to both express and implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001).  A petitioner has the burden of rebutting the presumption of correctness by clear-and-convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written opinion, as in this case, it is an adjudication on the merits, which is also entitled to the presumption of correctness. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

## V. DISCUSSION

### (1) No Evidence

Under his first ground, Petitioner claims that his constitutional right to due process was violated because "the Record at hand [is] devoid [of] any Evidence of the Decease[d] being murder[ed] for the Status of being a Prospective Witness." (Pet. 6 & Pet'r's Mem. 1, ECF No. 1.) According to Petitioner, at the time of the murder there were no charges filed against him, thus the

---

[1]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

deceased was merely a person who reported the occurrence of a crime, not a "prospective witness." (Pet'r's Mem. at 3, ECF No. 1.)

A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence. *Gibson v. Collins,* 947 F.2d 780, 782 (5th Cir. 1991). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas-corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Id.* at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000). A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to great deference by a reviewing court. *Marshall v. Lonberger,* 459 U.S. 422, 433-35 (1983). In addition, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Jackson,* 443 U.S. at 322 n.15.

Applying *Jackson* and relevant state law, the state appellate court addressed Petitioner's claim as follows:

## Sufficiency of the Evidence

### Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony."

The sufficiency standard set forth in *Jackson* is measured against a hypothetically correct jury charge. Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. The "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument."

### Applicable Law

Appellant was indicted and tried for the offense of capital murder. Specifically, murder committed in the course of committing retaliation. The elements of the indictment against appellant are:

1) Jackie Lee Bibbs
2) in Tarrant County, Texas

8

3) on or about the 15th day of May 2009
4) intentionally caused the death of Candalin Daniels
5) by shooting her with a deadly weapon, to-wit: a firearm
6) [appellant] committed the murder while in the course of committing
7) retaliation against Candalin Daniels.

The offense of retaliation is codified in [Texas penal code] section 36.06 and consists of the following elements:

1) Intentionally or knowingly
2) harms or threatens to harm
3) another by an unlawful act
4) in retaliation for or on account of service or status of another as
5) a witness or prospective witness.

<u>Analysis</u>

Appellant contends that the evidence is insufficient to establish that appellant killed Candy because she tried to have a restraining order issued against appellant. However, such a position is not indicative of all the evidence against appellant, and is not representative of what the indictment and the court's charge required the State to prove.

The record reflects that Cooper testified, without objection, that he had met Candy first on April 14, 2009. Through that meeting, he determined that Candy and appellant had been in a romantic relationship that was "going south." Cooper had knowledge that Candy alleged that appellant had broken into her home in March 2009, and destroyed quite a bit of her clothing by pouring bleach on them. Further, Cooper was aware of an ongoing dispute between Candy and appellant regarding their child, Cordarian. After discussing this matter with appellant following Candy's visit of April 14, Cooper advised appellant to take the issue of custody up through proper legal channels and warned appellant that any attempt at self-help could result in an administrative warrant being issued to revoke his parole. As a result of Cooper's contacts with Candy, appellant was instructed to have no contact with her.

Cooper saw Candy again on May 5, 2009. At this

9

time, Candy advised Cooper that appellant had threatened her. Following his conversation with Candy, Cooper spoke to his supervisor about the situation. The supervisor advised Cooper to have Candy come back to the office and make a sworn statement. Candy returned and prepared a sworn statement. As a result of Candy's statement, appellant's terms of parole were modified to prohibit appellant from having any contact with Candy. Appellant was notified of this modification at a meeting with Cooper on May 12. Cooper testified that he personally went over this modification with appellant on that date. Additionally, at the May 12 meeting, appellant informed Cooper that he had been served with a protective order and was due in court for a hearing on the protective order on May 20. As a result of the information Candy provided to Cooper, Cooper testified that Candy was a potential witness against appellant at a parole revocation hearing.

In addition to Cooper's testimony, Judith Wells, presiding judge of the 325th Family District Court in Tarrant County, testified about the issuance of an *ex parte* protective order against appellant. Candy filed a sworn application for the protective order on May 4, 2009. This was admitted as State's Exhibit 38 (S-38). The application alleged acts of family violence committed by appellant against Candy. After reviewing the application, Judge Wells signed the *ex parte* protective order that same day. This exhibit was admitted before the jury as State's Exhibit 39 (S-39). S-39 contains an order setting a hearing on the protective order for May 20. The *ex parte* protective order was served on appellant on May 5, according to the return of service admitted into evidence as State's Exhibit 40 (S-40) and the testimony of Deputy Constable for Precinct 5 of Tarrant County, Lizeth Bukowski. Bukowski identified appellant was the person she served the *ex parte* protective order on. According to Judge Wells's testimony, Candy had reported a crime, family violence, against appellant, and was to have been a witness against appellant in that hearing scheduled for May 20.

Additionally, in the weeks prior to her murder, Candy reported three separate incidents involving appellant to the Fort Worth Police Department. On March 28, 2009, Officer Jeffrey Cunningham was dispatched to Candy's home in reference to a burglary allegation. Upon arrival at Candy's home, Cunningham observed a bedroom

10

window that had been broken out. Cunningham also observed that Candy's clothes had bleach poured on them. While Cunningham was on the scene, Candy received a phone call from appellant. Cunningham testified that the person identified as appellant admitted to bleaching the clothing because he was mad at Candy. Cunningham further testified that he was preparing to file criminal mischief charges against appellant until Candy stated she did not want to testify against appellant and send him back to prison. As a result of Candy's unwillingness to testify, no charges were filed.

On April 15, 2009, Officer James Thomas responded to a domestic disturbance call at Candy's residence. Thomas testified that the nature of the disturbance was threatening phone calls that, according to the reporting party, Candy, originated from appellant. After receiving the information, Thomas gave Candy the family-violence packet to seek a protective order.

On May 5, 2009, Officer Johnny Gonzalez responded to a prowler call at Candy's residence. According to the information provided to Gonzalez, Candy had received a phone call from her daughter, Kiera, stating that appellant was attempting to break into the house. Gonzalez checked the perimeter of Candy's home and found that one window had been broken. Gonzalez obtained the name of appellant as the perpetrator and prepared a report alleging criminal mischief as the crime. Because of Candy's death ten days after the offense, no charges were filed. However, Candy was the person who reported the crime and could have been called to testify against appellant.

When a review of all of the evidence has been conducted, it becomes apparent that the State produced testimony and exhibits of at least five separate events where Candy was a potential witness against appellant: the possible parole revocation based upon Cooper's testimony; the protective order hearing based upon the testimony of Judge Wells and Bukowski; and the three separate incidents of alleged criminal activity investigated by the Fort Worth Police Department. In considering all of this evidence in the light most favorable to the verdict, as we must, a jury could rationally decide beyond a reasonable doubt that appellant killed Candy in retaliation for her status as a prospective witness.

(Adm. R., Op. 12-17, ECF No. 10-10 (citations omitted).)

The state court's determination of the claim is a reasonable application of *Jackson.* The term "prospective witness" is not statutorily defined, however the Texas Court of Criminal Appeals has defined a "prospective witness" as "a person who may testify in an official proceeding." *Morrow v. State,* 862 S.W.2d 612, 614 (Tex. Crim. App. 1993). The state court has also held that "an official proceeding need not be initiated in order for a person to be a 'prospective witness' under section 36.06 of the Penal Code." *Id.* at 615. Thus, deferring to the state court's interpretation of state law, as this Court must, the fact that there were no criminal charges against Petitioner actually filed at the time he murdered the victim does not alter the fact that the victim was a person who may have testified in an official proceeding against him. Petitioner is not entitled to habeas relief under his first ground.

(2)  Variance

Under his second ground, Petitioner claims that there was a variance between the indictment and the jury charge. (Pet. 6 & Pet'r's Mem. 4-5, ECF No. 1.) Specifically, he asserts (all misspellings and grammatical errors are in the original)–

> Petitioner was indicted for the complaint being a prospective witness but at trial state showed she was a person who has reported the occurrence of a crime which is another element of the offense which the jury charge also listed.

(Pet. 6, ECF No. 1.)

12

The indictment in this case alleged, in relevant part, that Petitioner "committed the murder while he was in the course of committing the offense of retaliation against Candalin Daniels." (Adm. R., Clk's R., vol. 1, 2.)  Thus, the grand jury did not indict Petitioner for killing a prospective witness but for retaliation. As noted by the state habeas court, the jury charge, tracking the statutory language, instructed the jury regarding whether to find Petitioner guilty of "committing murder in the course of committing the offense of retaliation."  In this respect, the court determined the charge "properly mirrored the indictment," and, thus, Petitioner "failed to prove that a fatal variance existed."  (*Id.,* SH1-WR-80,624-01-Writ Rec.-Pt. 2, 109, 121, ECF No. 12-2.)  The court further noted that the charge instructed the jury on the statutory definition of "retaliation" as follows:

> A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a prospective witness or a person who has reported the occurrence of a crime.

(Adm. R., Clk's R., Pt. 2, 319, ECF No. 10-4.)  And, because "[t]he statute defines retaliation, in part, as harming a prospective witness or a person who has reported, or who intends to report a crime," the charge tracked the statute.  (*Id.* at 109.)  As a matter of state law, it appears that the fact that the charge defined "retaliation" does not create a variance nor does it authorize the jury to convict Petitioner on a theory not alleged in the

13

indictment. *Thompson v. State,* 840 S.W.2d 548, 550 (Tex. App.-Tyler, 1992, no pet.). The indictment correctly charged Petitioner with murder during the commission of "retaliation" against the victim, a word that is defined in the penal statute. *See* TEX. PENAL CODE ANN. art. 36.06(a). "[W]hen a term is defined in the statutes, it need not be further alleged in the indictment." *Thomas v. State,* 621 S.W.2d 158, 161 (Tex. Crim. App. 1981). In any event, in habeas actions, federal courts do not sit to review mere errors under state law. *Dickerson v. Guste,* 932 F.2d 1142, 1145 (5th Cir.), *cert. denied,* 502 U .S. 875 (1991). At its core, Petitioner's claim only raises a question regarding Texas law. *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir. 1993). Thus, because the indictment was sufficient under Texas law, Petitioner's claim provides no basis for federal habeas-corpus relief. *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir.), *cert. denied,* 512 U.S. 1289 (1994); *McKay v. Collins,* 12 F.3d 66, 68-69 (5th Cir.), *cert. denied,* 513 U .S. 854 (1994). Petitioner is not entitled to relief under his second ground.

(3)  Abuse of Discretion

In his third ground, Petitioner claims that the trial court erred in admitting into evidence a hearsay statement--Candy's written statement to Petitioner's parole officer--and that the appellate court abused its discretion in determining that the admission was harmless. (Pet. 7 & Pet'r's Mem. 5-7, ECF No. 1.)

14

In *Crawford v. Washington*, the Supreme Court held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial and the defendant lacked a prior opportunity for cross-examination, even if the statement falls under a hearsay exception.  514 U.S. 36, 53-54 (2004).  Applying *Crawford* and relevant state law, the state appellate court addressed the issue as follows:

State's Exhibit No. 2

Appellant's second and third issues deal with the trial court's rulings regarding the admissibility of State's Exhibit 2 (S-2).  S-2 is the written statement that Candy made to appellant's parole officer on May 5, 2009.  Appellant's second issue contends that the admission of this exhibit violated appellant's right of confrontation under the 6th amendment to the United States Constitution [and *Crawford v. Washington,* 541 U.S. 36 (2004)].  Appellant's third issue contends that the exhibit was hearsay and not admissible evidence.  We will address these issues together.

Standard of Review

When addressing issues relating to the trial court's admission of evidence, the abuse of discretion standard applies.  A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement.  Additionally, an appellate court will review the trial court's ruling in light of what was before the trial court at the time the ruling was made.  In the absence of findings of fact and conclusions of law, the trial judge's decision will be sustained if it is correct on any theory of law applicable to the case.

Analysis of Confrontation Claim

The State's response to appellant's initial complaint that the admission of S-2 violated the right of confrontation is to suggest that the exhibit was not hearsay, which is a requirement for a confrontation

15

violation under *Crawford*.  This is because, according to the State, the exhibit was not offered for the truth of the matters asserted, but only to show that Candy made the report to appellant's parole officer.  However, the record before us belies this contention because, when the State offered S-2, the trial attorney for the State informed the trial court, "Your Honor, we'd offer State's Exhibit Number 2 for all purposes."  Subsequently, the trial court admitted the exhibit over appellant's objection without any limiting instruction being given to the jury.  Neither did the trial court give any limiting instruction in the court's charge on the use of S-2.  Under these facts, we would be hard pressed to say that Candy's affidavit was not testimonial hearsay.

. . .

[W]e are left with an out-of-court statement that is testimonial in nature.  This statement has been offered for the truth of the matters asserted therein, and appellant has not had the opportunity to confront the testifying party.  These are the elements of a *Crawford* objection.  Accordingly, we find that the trial court committed error when it admitted S-2 over appellant's confrontation objection.

Harm Analysis

Inasmuch as we have determined the trial court erred in admitting the exhibit over a constitutional confrontation objection, we now apply Tex. R. App. P. 44.2(a) to determine whether the error is harmless.  A violation of the confrontation clause is subject to a harmless error analysis.  In making a harmless error determination, we are to ascertain if the verdict or punishment would have been the same absent the error.  In conducting our review, we review the entire record.  [A]mong the things we must consider are: 1) the importance of the hearsay evidence to the State's case; 2) whether the hearsay evidence was cumulative of other evidence; 3) the presence or absence of other evidence corroborating or contradicting the hearsay evidence on material points; and 4) the overall strength of the State's case.  Further, inasmuch as this was a non-death penalty capital case, the verdict of guilty meant an automatic sentence of life in the ID–TDCJ. Therefore, the wrongful admission of S-2, beyond a reasonable doubt, would not have altered the sentence.  Accordingly, we

find the introduction of S-2 was harmless.

Analysis of Hearsay Claim

Again, the State initially contends that S-2 was not hearsay.  We refer the parties to our decision regarding the offer of the exhibit as set forth in the previous paragraph.  If the document is hearsay, as determined above, then we must proceed to ascertain if error in admitting the exhibit was harmless.  For this determination, we apply the provisions of Tex. R. App. P. 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless.  In making this harm determination, we examine the entire record and calculate the probable impact of the error upon the rest of the evidence.

Our review of the record recited in the analysis of harm pursuant to constitutional error under Texas Rule of Appellate Procedure 44.2(a) is equally applicable to the analysis of harm under Texas Rule of Appellate Procedure 44.2(b).  As such, we remain convinced that the admission of S-2 was cumulative of other evidence admitted before the jury and that the evidence against appellant was overwhelming.  The admission of S-2 had no or only a slight effect in the jury's determination and, therefore, did not have a substantial and injurious effect on the jury's verdict.

(Adm. R., Op. 6-11, ECF No. 10-10 (citations and footnotes omitted).)

A Confrontation Clause violation is subject to a harmless-error analysis.  *Bullcoming v. New Mexico,* 131 S. Ct. 2705, 2719 n.11 (2011); *U.S. v. Harper,* 527 F.3d 396, 400-01 n.3 (5th Cir. 2008). A federal habeas court must assess the prejudicial impact of constitutional error in a state court criminal trial under the "substantial and injurious effect" standard of *Brecht v. Abrahamson.* 507 U.S. 619 (1993).  Under *Brecht,* a federal court may grant habeas

relief on account of constitutional error only if the error had a "substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice." *Id.* at 637.  In light of the other overwhelming evidence against Petitioner in this case, the state court's determination that the *Crawford* error was harmless was reasonable.  Petitioner is not entitled to relief under his third ground.

(4)  Perjured Testimony

In his fourth ground, Petitioner claims the state used the perjured testimony of Tarik Sadalla, the store owner or manager, that he saw Petitioner commit the murder on the surveillance monitor in a back room, when Sadalla can be seen on the security cameras at the time of the shooting.  (Pet. 7 & Pet'r's Mem. 7-9, ECF No. 1.)

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Faulder v. Johnson,* 81 F.3d 515, 519 (5th Cir.) (citing *Napue v. Illinois,* 360 U.S. 264 (1959)),*cert. denied,* 519 U.S. 995 (1996).  To prove a due-process violation based upon a prosecutor's use of perjured testimony, a habeas petitioner must demonstrate that (1) the testimony was actually false; (2) the state knew that it was false; and (3) the testimony was material.  *See id;* *Boyle v. Johnson,* 93 F.3d 180, 186 (5th Cir. 1996), *cert. denied,* 519 U.S. 1120 (1997).

The state habeas court entered the following factual findings

18

on the issue:

17. Sadalla was not the only person working at the store that evening.

18. Sadalla was assisted by another employee.

19. Sadalla testified that he himself called 9-1-1 using the store's cordless phone.

20. Based on the testimony, Sadalla was the male wearing the white striped shirt.

21. Sadalla testified that his employee was behind the counter and took cover at the time of the shooting.

22. At the time of the shooting, the employee, and not Sadalla, is the person behind the counter who can be seen hitting the floor.

23. Sadalla cannot be seen in the surveillance photos at the time the shooting starts.

24. The security camera images are consistent with Sadalla's testimony that turned his face to the monitors in the office when he heard the shooting.

25. There is no evidence that Sadalla testified falsely.

(Adm. R., SH1-WR-80,624-01-Writ Rec.-Pt. 2, 110, ECF No. 12-2.)

Applying these factual findings, the court concluded that inconsistent testimony goes to the credibility of the state's witnesses and does not establish the use of perjured testimony and that Petitioner had failed to prove the state used perjured or false evidence. (*Id.* at 122.) Petitioner has not demonstrated that the state court's adjudication of the claim is contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, and the state court's decision comports with Fifth Circuit case law. *See Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990);

*Little v. Butler,* 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured). The record does not support Petitioner's claim of perjury, much less a claim that the prosecutor in any way acted improperly or knowingly presented false testimony. *Chambers v. Johnson,* 218 F.3d 360 (5th Cir. 2000). Petitioner is not entitled to relief under his fourth ground.

### (5)   Illegal Arrest

In his fifth ground, Petitioner claims that his arrest was illegal because Sadalla did not see what he claimed to have seen and, thus, the probable-cause affidavit contained false information. Pet'r's Mem. 9, ECF No. 1.)   Relying on the same factual findings stated above, the state habeas court concluded that, absent evidence that the arrest-warrant affidavit actually contained false information, Petitioner failed to prove his claim. (Adm. R., SH1-WR-80,624-01-Writ Rec.-Pt. 5-6, 122, ECF No. 12-2.)   Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value." *Ross v. Estelle,* 694, F.2d 1008, 1011 (5th Cir. 1983). Absent evidentiary support, mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Id.* at 1012. Petitioner is not entitled to relief under his fifth ground.

(6)   Denial of Right to Counsel

In his sixth ground, Petitioner claims he was denied his right to counsel because he could not effectively waive the right given his low IQ and lack of formal education.  (Pet'r's Mem. 10-12, ECF No. 1.)  The record reflects that although the trial judge allowed Petitioner to represent himself at trial before a jury, the same judge found that Petitioner did not possess the requisite knowledge of the law and that, based on a psychological evaluation performed before trial, his IQ level of 68 was not sufficient to adequately represent himself on appeal.  (Pet., App. D, ECF No. 1.)

In *Faretta v. California,* 422 U.S. 806 (1975), the Supreme Court held that a criminal defendant has a constitutional right under the Sixth and Fourteenth Amendments to proceed without counsel in a state criminal case when he voluntarily and intelligently elects to do so after having been made aware of the dangers and disadvantages of self-representation.  422 U.S. at 835.

The state habeas court entered the following factual findings on the issue:

36.   On October 20, 2009, this Court granted Applicant's request for new counsel and allowed Hon. Larry Moore and Hon. David Pearson to withdraw.

37.   This Court advised Applicant that he would not be allowed to change lawyers again.

38.   On January 8, 2010, a hearing was held on Applicant's request that he be appointed new counsel.

39.   On January 8, 2010, this Court denied Applicant's request for change of counsel.

40.  On January 15, 2010, this Court denied Applicant's request for  change of counsel.

41.  On June 16, 2010, after three of the State's witnesses testified, Applicant requested to represent himself.

42.  This Court inquired into Applicant's education, knowledge of the rules of evidence, and why he wanted to represent himself.

43.  Applicant explained that he wanted to represent himself because his attorneys failed to object to his satisfaction.

44.  During trial, the trial court discussed with Applicant his right to represent himself.

45.  After all the trial court's admonishments, including questioning him about the law, the rules of evidence, and court decorum, the trial court strongly urged Applicant to proceed to trial with his appointed counsel.

46.  The record establishes that Applicant was given sufficient information to know what he was doing "with eyes open."

47.  Applicant chose to represent himself.

48.  Applicant was given plenty of opportunity to proceed to trial with his appointed counsel but chose not to.

49.  There is no evidence that Applicant was denied his right to counsel.

(Adm. R., SH1-WR-80,624-01-Writ Rec.-Pt. 2, 111-12, ECF No. 12-2

(citations to the record omitted).)

Based on its findings, the court concluded that *Faretta* "does

not *mandate* an inquiry concerning appellant's age, education,

background or previous mental health history in *every* instance where

an accused expresses a desire to represent himself, the record must

contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make 'an assessment of his knowing exercise of the right to defend himself.'" (*Id.* at 123 (citations omitted).)  The court further concluded that Petitioner was properly admonished as to the advantages and disadvantages of representing himself, that his wavier of counsel was knowingly, voluntarily and intelligently made, and, thus, he was not denied his right to counsel.  (*Id.*)

The state court's adjudication of the claim is not contrary to or an unreasonable application of *Faretta.*  Notwithstanding Petitioner's low IQ, the record reveals that he finished up to and including the tenth and part of the eleventh grades in high school; was determined by a licensed psychologist to be competent to stand trial; was thoroughly admonished regarding the perils of self-representation in light of his lack of knowledge regarding evidentiary and procedural rules; clearly and unequivocally asserted in court and in writing that he wanted to waive his right to counsel and represent himself; and was capable of conducting trial proceedings.  (Reporter's R., vol. 9, 7-21, ECF Nos. 11-5 & 11-6; Clerk's R., vol. 2 of 2, Pt-2, 312, ECF No. 10-4.)  Under such circumstances, the state court reasonably concluded Petitioner's invocation of his right to self-represent was voluntary, intelligent and knowing.  Petitioner is not entitled to relief under his sixth ground.

(7) and (8)   Ineffective Assistance of Counsel

In his seventh and eighth grounds, Petitioner claims he received ineffective assistance of counsel at trial and on appeal. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on the first appeal as of right. U.S. Const. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Further, in applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Finally, the Supreme Court recently emphasized in *Harrington v. Richter* the way that a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.

24

This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

131 S. Ct. at 785 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner was represented at trial by Steve Gordon and William Ray and on appeal by Warren St. John. Petitioner claims trial counsel were ineffective by failing to:

(1) voir dire the jury regarding the "prospective witness" issue and/or object to the state's definition of the term;

(2) conduct a reasonable investigation of the facts and law;

(3) attempt to interview Print Clark, Petitioner's parole officer, or any other state's witnesses;

(4) move for a mistrial when the prosecution introduced evidence of a "bad act" during opening statement; and

(5) object to the positive identification and the state's use of perjured testimony.

25

(Pet'r's Mem. 13, ECF No. 1.) Petitioner claims appellate counsel was ineffective by failing to raise, or fully brief, one or more of the claims he raises in this federal petition.  (*Id.* at 17.)

Based on the documentary record and his own recollection of the trial-court proceedings, the state habeas judge entered factual findings, too numerous to list here, refuting Petitioner's claims. And, applying *Strickland* to the totality of counsel's representation, the court concluded that Petitioner failed to prove that counsel was ineffective at trial or on appeal, that counsel's representation fell below objective standards of reasonableness, or that there existed a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial or appeal would have been different. (Adm. R., SH1-WR-80,624-01-Writ Rec.-Pt. 2, 111-12 & 123-28, ECF No. 12-2.)

Absent clear and convincing evidence in rebuttal, the Court defers to the state court's factual findings.  Thus, applying the appropriate deference and having independently reviewed Petitioner's claims in conjunction with the state-court records, it does not appear that the state courts' application of *Strickland* was objectively unreasonable. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis; are refuted by the record; involve state evidentiary rulings or other matters of state law; and/or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state Petitioner to federal

26

habeas relief.[2]  In any event, even if Petitioner could demonstrate defective assistance based on one or more of his claims, he has not made a showing of *Strickland* prejudice.  *Strickland,* 466 U.S. at 694-96.  Given the overwhelming evidence of Petitioner's guilt, there is no reasonable probability that the jury would have acquitted him but for counsel's acts or omissions.  Nor does Petitioner identify any potentially meritorious issues that appellate counsel should have raised on direct appeal.  A petitioner shoulders a heavy burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in

---

[2] *See, e.g., Lopez v. Smith,* — U.S. —, 135 S. Ct. 1, 3 (2014) (providing absent a decision by the Supreme Court addressing "the specific question presented by a case" a federal court cannot reject a state court's assessment of claim); *Burt v. Titlow,* — U.S. —, 134 S. Ct. 10, 17 (2013) (noting the absence of evidence cannot overcome the presumption that counsel's conduct fell within wide range of reasonable professional assistance); *Gonzalez v. United States,* 553 U.S. 242, 249 (2008) (providing tactical decisions generally controlled by counsel include "the arguments to advance"); *Strickland,* 460 U.S. at 691 (providing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002), *cert. denied,* 538 U.S. 926 (2003) (providing counsel is not required to make frivolous or futile motions or objections); *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) ("State evidentiary rulings do not warrant federal habeas relief unless they violate a specific constitutional right or render the trial so fundamentally unfair as to violate due process."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984).

*Strickland* based on the evidence presented in state court.  28 U.S.C. § 2254(d).  Petitioner is not entitled to relief under his seventh or eighth grounds.

## VI.   CONCLUSION

In summary, based on the record before the Court, the state courts' rejection of Petitioner's claims is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as established by the Supreme Court. And the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED January 19, 2016.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE